# 16-386-cv

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

VICTORINOX AG, VICTORINOX SWISS ARMY, INC., and WENGER NA, INC.,

> Plaintiffs-Respondents,

v.

THE B&F SYSTEM, INC. and JOHN D. MEYER, ABC CORPORATIONS 1-10, and JOHN DOES 1-10,

> Defendants-Appellants.

THE B&F SYSTEM, INC.,

> Counterclaim Plaintiff-Appellant,

v.

VICTORINOX AG, VICTORINOX SWISS ARMY, INC., and WENGER NA, INC.,

> Counterclaim Defendants-Respondents.

---

On Appeal from the United States District Court
For the Southern District of New York

---

## MEMORANDUM OF LAW IN OPPOSITION
## TO MOTION TO DISQUALIFY

---

Rory J. Radding
David Weild III
H. Straat Tenney
LOCKE LORD LLP
200 Vesey Street, 20th Floor
New York, NY  10281
212-415-8600
*Attorneys for Plaintiffs-Respondents Victorinox AG, Victorinox Swiss Army, Inc., and Wenger NA, Inc.*

AM 57325157.2

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT...................................................................... 1

I.    APPELLANTS HAVE FAILED TO ESTABLISH TRIAL TAINT ............ 5

    A.    Appellants' Confidences Have Not Been Shared .............................. 6

    B.    The Presumption Has Been Rebutted.................................................. 8

    C.    Denying Disqualification Will Not Offend Expectations of
        Loyalty.............................................................................................. 12

    D.    The Risk of Taint is At Most Theoretical, and Not Actual .............. 13

II.    BALANCE OF EQUITIES STRONGLY FAVORS VICTORINOX'S
     CHOICE OF COUNSEL ........................................................................... 16

    A.    Victorinox Will Suffer Extreme Hardship If It Is Denied Its
        Choice of Counsel ............................................................................ 17

    B.    The Evidence Suggests that this Motion Has Been Brought for
        Tactical Reasons............................................................................... 18

i

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Am. Int'l Gp., Inc. v. Bank of Am. Corp.,*
  827 F. Supp. 2d 341 (S.D.N.Y. 2011) ............................................................ 5, 6

*Arista Records LLC v. Lime Group LLC,*
  No. 06-5936 (KMW), 2011 WL 672254 (S.D.N.Y. Feb. 22, 2011) ............ 7, 12

*Bd. of Edu. v. Nyquist,*
  590 F.2d 1241 (2d Cir. 1979)................................................ 5, 12, 14, 18

*Canal+ Image UK Ltd. v. Lutvak,*
  792 F. Supp. 2d 675 (S.D.N.Y. 2011) ........................................ 14, 15

*Eugenia VI Venture Holdings, Ltd. v. Glaser,*
  No. 05-7262 (DC), 2005 WL 3071268 (S.D.N.Y. Nov. 15, 2005) ......................5

*Evans v. Artek Sys. Corp.,*
  715 F.2d 788 (2d. Cir. 1983)........................................................6

*Exco Res., Inc. v. Milbank, Tweed, Hadley & McCloy LLP (In re Enron Corp.),*
  No. 02-5638, 2003 WL 223455 (S.D.N.Y. Feb. 3, 2003) ........................... 14, 18

*Glueck v. Jonathan Logan, Inc.,*
  653 F.2d 746 (2d Cir. 1981)..........................................................5

*GSI Commerce Solutions, Inc. v. Babycenter, LLC,*
  618 F.3d 204 (2d Cir. 2010)........................................................ 14

*Hempstead Video, Inc. v. Vill. of Valley Stream,*
  409 F.3d 127 (2d Cir. 2005)..................................................... passim

*Intelli-Check, Inc. v. Tricom Card Tech., Inc.,*
  No. 03-3706, 2008 WL 4682433 (E.D. N.Y. Oct. 21, 2008) ......................... 7, 9

*Murray v. Metro. Life Ins. Co.,*
  583 F.3d 173 (2d. Cir. 2009).......................................................... 19

*Papyrus Tech. Corp. v. New York Stock Exch., Inc.*,
    325 F. Supp. 2d 270 (S.D.N.Y. 2004) ........................................................ 10, 11

*Reilly v. Comp. Assocs. Long Term Disability Plan*,
    423 F. Supp. 2d 5 (E.D.N.Y. 2006) ...............................................................7

*Silver Chrysler Plymouth v. Chrysler Motors Corp.*,
    518 F.2d 751 (2d Cir. 1975).......................................................... 12, 14

*Universal City Studios, Inc. v. Reimerdes*,
    98 F. Supp. 2d 449 (S.D.N.Y. 2000) ................................................... 19

*W.T. Grant Co. v. Haines*,
    531 F.2d 671 (2d Cir. 1976)............................................................ 17

Plaintiffs-respondents, Victorinox AG, Victorinox Swiss Army, Inc. and Wenger NA, Inc. (collectively, "Victorinox") submit this memorandum in opposition to defendants-appellants The B&F System, Inc. ("B&F") and John D. Meyer's (collectively, "Appellants") motion to disqualify Locke Lord, on the basis of an alleged conflict that arose from the January 12, 2015 merger of Locke Lord LLP and Edwards Wildman Palmer LLP, though no confidences have been (or will be) shared and no prejudice to Appellants asserted.[1] The Court should deny Appellants' motion.

## PRELIMINARY STATEMENT

The issue before this Court is whether there is a substantial risk of trial taint. That is, whether the alleged conflict would confer an unfair advantage on Victorinox in trying this case. If not, disqualification is unwarranted. *See Hempstead Video, Inc. v. Vill. of Valley Stream*, 409 F.3d 127, 132 (2d Cir. 2005) ("disqualification is only warranted where an attorney's conduct tends to taint the underlying trial") (citation omitted).

There is no risk of trial taint here. This action was commenced in June 2013 by Victorinox (represented by Edwards Wildman), a year and a half before the January 2015 Locke Lord-Edwards Wildman merger that occasioned the alleged

---

[1] Appellant John D. Meyer lacks standing to seek disqualification because he was never a Locke Lord client. However, because Mr. Meyer is the active and controlling force behind B&F's counterfeiting activities, Victorinox refers collectively to Appellants throughout this response.

1

conflict.[2] In December 2013 – still over a year prior to the merger – following document discovery, interrogatories, and multiple depositions, the parties cross moved for summary judgment. In January 2014, the district court held a hearing on the pending motions, and a month later issued a "bottom line" order granting Victorinox's motion for summary judgment and denying Appellants' motion. (Declaration of Rory J. Radding ("Radding Decl.") Ex. A.)[3] At all times Victorinox was represented by Edwards Wildman and Appellants by Colucci and Umans. Locke Lord played no role whatsoever in the case.

Fast forward a year: effective January 12, 2015, Locke Lord and Edwards Wildman legally merged to create a firm with more than 700 lawyers in 22 cities in the United States and overseas. (Declaration of Raymond E. LaDriere II ("LaDriere Decl.") ¶ 4.) Following the merger, legacy Locke Lord and legacy Edwards Wildman remained operating separate and independent computer systems – all documents, docketing and accounting systems were separate. (Declaration of

---

[2] Tellingly, Appellants seek to bolster their unsubstantiated position by misleading the Court, stating: "Locke Lord sued its own client, B&F, in this action on behalf of other clients [Victorinox], without disclosing the conflict or seeking a waiver from B&F." (Appellants Mem. at 1.) This position is false and is contradicted later in Appellants' brief. (*See, e.g.*, Appellants Mem. at 4 ("The Victorinox Parties were initially represented in this action by . . . Edwards Wildman Palmer LLP.").)

[3] The district court later found that Appellants' products "could only have been the product of intentional mimicry" and "the conclusion that [Appellants] intentionally infringed [Victorinox's] trademark and trade dress is inescapable." (Radding Decl. Ex. B, at 5-6.)

Jerry McEachern ("McEachern Decl.") ¶¶ 4-5.) Legacy Edwards Wildman users could not access legacy Locke Lord information, and vice versa. (*Id.*)

Additionally, the respective legacy firm offices in New York remained separate – the legacy Edwards Wildman attorneys stayed in their midtown offices and the legacy Locke Lord attorneys remained in their downtown offices. (LaDriere Decl. ¶ 6.) Not only is it impossible for the legacy Edwards Wildman attorneys to access legacy Locke Lord information and files without express permission (which has never been requested nor granted), but Victorinox's legacy Edwards Wildman attorneys were in a location separate from (i) anyone who worked on B&F's matters (who were in Dallas, Texas), and (ii) legacy Locke Lord's New York attorneys (who were in the downtown New York office). (McEachern Decl. ¶¶ 4-8.)

In November 2015, Roy Hardin, a partner in the Dallas office of legacy Locke Lord, first became aware that B&F was involved in a pending litigation with Victorinox. (Declaration of Roy W. Hardin ("Hardin Decl.") ¶ 6.) Upon learning of the matter, Mr. Hardin confirmed that for some years Locke Lord's work for B&F was *de minimus* and limited to ministerial trademark registration maintenance matters, wholly unrelated to the current action. (*Id.* at ¶ 8.) Mr. Hardin thought it appropriate to terminate Locke Lord's work with B&F and sent appellant John Meyer, President of B&F, a letter to that effect. (*Id.* at ¶ 9.) At no time, before or

3

after discovering this matter, did Mr. Hardin, or anyone who worked on B&F's matters, divulge information – confidential or not – concerning B&F to anyone who worked on the Victorinox litigation. (*Id*. at ¶ 11.) In addition to the technological and physical barriers that prevent legacy Edwards Wildman attorneys from accessing legacy Locke Lord documents and systems, Locke Lord promptly instituted a screen to prevent anyone – aside from authorized users – from accessing B&F and Victorinox documents. (LaDriere Decl. ¶ 7.) The Second Circuit holds that screening and other safeguards – formal and informal – are effective against the risk of disqualifying trial taint. *Hempstead*, 409 F.3d at 138.

Now, two years after Appellants lost their case in the district court, over a year after the law firm merger, and one month before their appeal brief is due, Appellants complain of an alleged conflict. They make no effort, however, to carry their heavy burden of proving trial taint. Appellants instead vaguely assert that the alleged conflict will taint the proceedings. (Appellants Mem. at 1.) This failure, alone, mandates denial of their motions.

Appellants' tactical motivation in filing this motion is transparent. They seek to oust the attorneys who initiated the case, who participated in discovery, who drafted and argued the successful summary judgment motion, and who are intimately knowledgeable about the case, thus depriving Victorinox of its counsel of choice. Victorinox has received no unfair advantage. Appellants have suffered

4

no prejudice. No confidential information from B&F has been shared with Victorinox's attorneys. Appellants have made no effort to demonstrate trial taint in any way. Requiring new counsel will severely prejudice Victorinox. Disqualification under these circumstances will not serve the policy objective of protecting the attorney-client privilege, but would only punish the party that sought relief in the courts. The motion should be denied.

## I.  APPELLANTS HAVE FAILED TO ESTABLISH TRIAL TAINT

Disqualification is only warranted in the rare circumstance where an attorney's conduct "poses a significant risk of trial taint." *Am. Int'l Gp., Inc. v. Bank of Am. Corp.*, 827 F. Supp. 2d 341, 341 (S.D.N.Y. 2011) (hereinafter "*AIG*") (citing *Glueck v. Jonathan Logan, Inc.*, 653 F.2d 746, 748 (2d Cir. 1981)); *see also Bd. of Edu. v. Nyquist*, 590 F.2d 1241, 1246 (2d Cir. 1979) (finding court should be hesitant to disqualify counsel unless it believes that "an attorney's conduct tends to taint the underlying trial"). Appellants make no more than a passing reference to the issue of trial taint. (Appellants' Mem. at 1.) This failure to carry their heavy burden warrants denial of the motion. *See, e.g., Eugenia VI Venture Holdings, Ltd. v. Glaser*, No. 05-7262 (DC), 2005 WL 3071268, at *4 (S.D.N.Y. Nov. 15, 2005) (denying disqualification because movants "have not met their 'heavy burden' of showing that disqualification is warranted—that the trial of the case would be 'tainted'").

"Disqualification is disfavored in this Circuit and, as a result, the party seeking it must meet a high standard of proof before it is granted." *AIG*, 827 F. Supp. 2d at 345 (citing *Evans v. Artek Sys. Corp.*, 715 F.2d 788, 791 (2d. Cir. 1983)). Disqualification motions are disfavored because they interfere with a party's right to choose counsel, and are "often interposed for tactical reasons." *Evans*, 715 F.2d at 791 (imposing "high standard of proof" on disqualification).

Second Circuit law determines whether disqualification is warranted. The American Bar Association and state disciplinary rules "merely provide general guidance and not every violation of a disciplinary rule will necessarily lead to disqualification." *Hempstead*, 409 F.3d at 132; *see also AIG*, 827 F. Supp. 2d at 345 ("[T]he Court's primary concern is with the integrity of the adversary process, not the enforcement of the ethical rules.").

## A.  Appellants' Confidences Have Not Been Shared

"One recognized form of taint arises when an attorney places himself in a position where he could use the client's privileged information against the client." *Hempstead*, 409 F.3d at 133. Victorinox's attorneys never received privileged information so it would be impossible to use it against B&F. Appellants argue that the fact that "Locke Lord's representation of [Victorinox], while at the same time, [] representing B&F, created a conflict of interest that is imputed on the entire

6

firm."[4] (Appellants Mem. at 8-9.) The Second Circuit has rejected the notion that a presumption of shared confidences is irrebuttable. *See Hempstead*, 409 F.3d at 133 (noting "a strong trend, which we join, toward allowing the presumption of confidence sharing within a firm to be rebutted") (citations and internal quotations omitted).

The presumption may be rebutted by, *inter alia*, sworn affidavits demonstrating that no confidential information was shared and that an ethical screen – formal or informal – insulated against the flow of confidential information from the conflicted attorneys to others in the firm. *See, e.g., Hempstead*, 409 F.3d at 133; *see also Arista Records LLC v. Lime Group LLC*, No. 06-5936 (KMW), 2011 WL 672254, at \*26-27 (S.D.N.Y. Feb. 22, 2011) (presumption rebutted by affidavits); *Intelli-Check, Inc. v. Tricom Card Tech., Inc.*, No. 03-3706, 2008 WL 4682433, at \*5 (E.D. N.Y. Oct. 21, 2008) (finding *de facto* separation – geographically and technologically – "existed between [allegedly conflicted attorneys at the same firm] at the time of the merger makes inadvertent disclosures unlikely"); *Reilly v. Comp. Assocs. Long Term Disability Plan*, 423 F. Supp. 2d 5,

---

[4] Appellants routinely mischaracterize the quantity and importance of work performed by Locke Lord for B&F during the relevant period, January 12, 2015 to present. (*See, e.g.*, Appellants Mem. at 9 (describing the work as a "plethora of other matters.").) In reality, from January 2015 to present, Locke Lord only filed one trademark renewal for B&F. (Hardin Decl. ¶ 8.) This matter was ministerial and has no relevance to this litigation.

12 (E.D.N.Y. 2006) ("affidavits provide strong circumstantial support to the claim that Heck was isolated from others in the firm").

## B.    The Presumption Has Been Rebutted

**Sworn Statements from All Participants.** The record before this Court definitively refutes Appellants' unsupported insinuation that Mr. Hardin might have shared confidences with Victorinox's litigation team, or vice versa. Texas-based Mr. Hardin has sworn, without reservation, that no confidences were shared. (Hardin Decl. ¶ 11.) So, too, have Victorinox's New York-based litigation team. (Radding Decl. ¶¶ 10-11; Declaration of David Weild III ("Weild Decl.") ¶¶ 4-5; Declaration of H. Straat Tenney ("Tenney Decl.") ¶¶ 5-6; Declaration of Danielle E. Gorman ("Gorman Decl.") ¶¶ 6-8.) These uncontroverted declarations establish that no confidences were shared. Appellants have made no effort to show even a trace of trial taint, nor can they.

**Technological Wall Prohibits Disclosure.** After the January 12, 2015 merger, the document management systems of the two legacy firms remained distinct. (McEachern Decl. ¶ 4.) Locke Lord and Edwards Wildman continued to use their respective document management systems; the systems were not, and still are not, integrated. (*Id*. at ¶¶ 5-6) Legacy Edwards Wildman users cannot access legacy Locke Lord's electronic information, and vice versa. (*Id*.) Between January 2015 and December 15, 2015, legacy Edwards Wildman used an older version of

the document management software than legacy Locke Lord. (*Id.*) The different versions of the software prevented anyone other than legacy Locke Lord users from accessing data in the legacy Locke Lord system. (*Id.*) On December 15, 2015, the firm installed a new version of the software on legacy Edwards Wildman users' computers. (*Id.* at ¶ 7.) To access data on the legacy Locke Lord system, however, the legacy Edwards Wildman users first must ask the IT Department to create a user account for the legacy Locke Lord system. (*Id.*) No one on the Victorinox litigation team has requested this access. (*Id.*) The technological barriers further weigh against disqualification. *Intelli-Check*, 2008 WL 4682433, at *5-6.

**Geographic Barriers Prevent Disclosure.** The geographic proximity between allegedly conflicted attorneys is relevant because attorneys who are far apart are less likely to share confidences. *See, e.g.*, *Intelli-Check*, 2008 WL 4682433, at *3 (finding geographic separation between New York and D.C. office supported no disqualification). Here, B&F matters were handled solely out of the Dallas office. (LaDriere Decl. ¶ 6.) All files related to these matters were stored in Texas (and are now in B&F's possession). In addition to being over 1,300 miles apart, from January 2015 to December 2015, the legacy Edwards Wildman attorneys remained in the separate midtown office, whereas their New York-based Locke Lord colleagues stayed at the office in downtown New York. The geographic separation between the attorneys weighs against disqualification.

**Electronic Audit.** Further corroborating the effectiveness of the *de facto* screen, Locke Lord's IT Department has conducted an electronic audit of all documents maintained on Locke Lord's document management system under matter numbers for B&F. (McEachern Decl. ¶ 10.) The audit confirmed that no one in its New York office, much less on Victorinox's litigation team, and in fact no one outside the Dallas office, created or accessed documents related to B&F. (*Id.*)

**Ethical Screen is Effective and Timely.** To protect against the spread of confidential information, an ethical screen should be implemented upon a firm's actual notice of a conflict. *See, e.g., Hempstead*, 409 F.3d at 138 ("We see no reason why, in appropriate cases and on convincing facts, isolations—whether it results from the intentional construction of a 'Chinese Wall,' or from *de facto* separation that effectively protects against any sharing of confidential information—cannot adequately protect against taint."); *Papyrus Tech. Corp. v. New York Stock Exch., Inc.*, 325 F. Supp. 2d 270, 281 (S.D.N.Y. 2004) (approving screen implemented three months after the firm "received actual notice that . . . confidences or secrets may have been disclosed").

In this case, Mr. Hardin first learned about a possible conflict in late November 2015.[5] (Hardin Decl. ¶ 6.) Mr. Hardin immediately checked to see if Locke Lord had residual files for B&F matters. (*Id.* at ¶ 8.) Mr. Hardin soon

---

[5] Victorinox's litigation team first learned of the alleged conflict on February 12, 2016 when informed by Appellants' counsel of their plan to file the motion.

learned that Locke Lord still performed ministerial trademark registration maintenance activities – wholly unrelated to the pending litigation – for B&F. (*Id*.) Mr. Hardin immediately sent the files to B&F. (*Id*.) At no time did Mr. Hardin share confidential information with Victorinox's litigation team. (*Id*.)

Having had a *de facto* screen for over a year, on February 19, 2016, less than three months from the date the firm first recognized a potential conflict, Locke Lord implemented a formal ethical screen. (LaDriere Decl. ¶¶ 7-8.) Under the screen all relevant attorneys, paralegals, secretaries and staff persons are prohibited from (i) disclosing information concerning the B&F representation to Victorinox's litigation team; (ii) allowing Victorinox's litigation team to read, review, receive or have access to any information pertaining to B&F; and (iii) communicating information concerning B&F in the presence of a member of the Victorinox's litigation team. (*Id*.) All the affected attorneys agreed in writing to abide by these restrictions. *See, e.g.*, *Papyrus*, 325 F. Supp. 2d at 280 (approving a similarly designed screen).

Locke Lord also sealed the firm's document management system so only Mr. Hardin can access documents pertaining to B&F. (*Id*.) The rest of the firm is barred from accessing those documents. (*Id*.) This screen, in addition to the technological and geographic barriers in place, isolates Victorinox's litigation team

from any B&F information, thereby immunizing Victorinox's counsel from any trial taint.

**Locke Lord Is A Large Law Firm.** The *de facto* separation (geographically and technologically) and ethical screens are more effective because Locke Lord is a large law firm. *See, e.g.*, *Silver Chrysler Plymouth v. Chrysler Motors Corp.*, 518 F.2d 751, 753-54 (2d Cir. 1975) (indicating that inadvertent disclosures are less likely at large firms). Leading up to the merger, the respective firms exchanged lists of certain clients for conflict checks. (LeDriere Decl. ¶ 5.) Locke Lord has now learned that B&F was not included in its list of clients turned over to Edwards Wildman. (*Id.*) However, the conflict check does not have to be perfect, and the existence of an imperfect check alone is not the cause for disqualification. *See, e.g.*, *Arista*, 2011 WL 672254, at *8 (recognizing that the firm's conflict and screening procedures were "sub-standard," but denying disqualification because the "conflict has not tainted, and will not taint, the upcoming trial"). Locke Lord is a large, multinational law firm with offices across the globe. Victorinox's litigation team works out of the New York office. All work for B&F was performed in the Dallas office. B&F's confidences have not and will not be revealed.

### C. Denying Disqualification Will Not Offend Expectations of Loyalty

Another form of trial taint comes when the "court's confidence in the vigor of the attorney's representation of his client" is undermined. *Nyquist*, 590 F.2d at

1246.  Disqualification may be improper where "there will be no actual or *apparent* conflict in loyalties or diminution in the vigor of [] representation." *Hempstead*, 409 F.3d at 133 (internal citation and quotations omitted; emphasis in original). B&F does not argue that there is a conflict in loyalties moving forward. Rather, it asserts that Locke Lord's continued representation would "undermine the integrity of the judicial process." (Appellants Mem. at 1.) As much as B&F tries to paint Victorinox's disqualification as a case of side-switching, it is not. When Victorinox commenced this case, its attorneys were still with Edwards Wildman. It was not until after Victorinox won the case, and following counsels' merger in January 2015, that the alleged conflict – however remote – came into play. Had Locke Lord discovered the alleged conflict before the merger, it would have sent B&F a letter terminating the relationship. (LaDriere Decl. ¶ 6.) Nonetheless, no client confidences have been or will be divulged, B&F is no longer a client of Locke Lord, and the Victorinox litigation team will continue to vigorously represent its clients. Thus, client expectations of loyalty are not implicated, as no breach of loyalty or resultant harm to perceptions of the legal profession have occurred.

### D.    The Risk of Taint is At Most Theoretical, and Not Actual

Appellants assert that the mere fact that there was "dual representation" warrants disqualification. (Appellants Mem. at 9.) However, the Second Circuit in

*Hempstead* **rejected** the *per se* disqualification standard. 409 F.3d at 135 ("A *per se*

rule has the virtue of clarity, but in achieving clarity, it ignores the caution that

'[w]hen dealing with ethical principles . . . we cannot paint with broad strokes. The

lines are fine and must be so marked.'") (quoting *Silver Chrysler*, 518 F.2d at 753

n.3). Disqualification is only warranted where "an attorney's conduct tends to taint

the underlying trial." *Hempstead*, 409 F.3d at 132 (quoting *Nyquist*, 590 F.2d at

1246). But, "conclusory assertions" and "mere speculation" do not establish taint.

*See, e.g.*, *Canal+ Image UK Ltd. v. Lutvak*, 792 F. Supp. 2d 675, 688 (S.D.N.Y.

2011) ("The most Canal+ could marshal in support of its motion were [a lawyer's]

conclusory assertions . . . None of these assertions establishes 'taint.'"); *Exco Res.,*

*Inc. v. Milbank, Tweed, Hadley & McCloy LLP (In re Enron Corp.)*, No. 02-5638,

2003 WL 223455, at *4 (S.D.N.Y. Feb. 3, 2003) ("Mere speculation will not

suffice to establish sufficient grounds for disqualification.") (citation omitted).[6]

    Mr. Hardin worked on general intellectual property matters for B&F in the

1990s, but in the early 2000s B&F started taking its work elsewhere. (Hardin Decl.

---

[6] Appellants cite *Hempstead* in support of their assertion that concurrent
representation is prima facie improper, Appellants Mem. at 5, but ignore the fact
that *Hempstead* held that the presumption of shared confidences may be rebutted
by ethical screens. *See Hempstead*, 409 F.3d at 133. All but one case cited by
Appellants is post-*Hempstead* and are thus of doubtful applicability to the facts at
hand. The only post-*Hempstead* case relied on by Appellants, *GSI Commerce*
*Solutions, Inc. v. Babycenter, LLC*, 618 F.3d 204 (2d Cir. 2010), is inapposite
because a *de facto* screen, rebuttal of imputed knowledge, and trial taint were not
raised, but instead concerned an issue of first impression regarding corporate
affiliate conflicts, which is inapplicable here.

¶¶ 3-4.) The matters that Mr. Hardin previously handled for B&F – over a decade ago – and the irrelevant ministerial trademark maintenance work Locke Lord provided since the merger are wholly unrelated to this litigation, and not the "same subject matter," as alleged by Appellants. (*Id*. at ¶ 8.) Moreover, there is a fatal chronological gap in Appellants' proof—Victorinox's investigation of Appellants' unlawful conduct, the preparation and filing of the complaint, discovery and depositions, the summary judgment briefing and argument, and the district court's disposition of the matter in Victorinox's favor, all occurred <u>prior</u> to the Locke Lord-Edwards Wildman merger and ***before*** the alleged conflict. Trial in this matter was originally schedule for January 2014 (a year before the merger), but was unnecessary as soon as the district court determined that Appellants acted in bad faith and sold counterfeit knives.

Appellants vaguely assert that Mr. Hardin possesses certain information – namely, "the scope of B&F's operations, as well as the various products it sells, and the catalogs it has published." (Appellants Mem. at 3.) This information is in any event publicly available, and not protected client confidences. *See, e.g.*, *Canal+ Image*, 792 F. Supp. 2d at 688 (finding disqualification "warranted only if [] attorneys possessed confidential information that would 'taint' the underlying trial"). There is no possible risk of shared confidences under the circumstances of this case. Further, any information that Mr. Hardin, or anyone at Locke Lord, may

have had would likely be stale because it was divulged over a decade ago and in regard to unrelated matters.

B&F never approached Mr. Hardin or Locke Lord when U.S. Customs seized its counterfeit knives in March 2013. (Hardin Decl. ¶ 12.) B&F instead engaged counsel at the firm Smith Moore Leatherwood LLP, who then filed the cancellation petition against Victorinox's U.S. Trademark Reg. No. 3546920. (Radding Decl. ¶ 5.) B&F did not consult Locke Lord concerning the cancellation action or this litigation. (*Id*.) Moreover, Colucci and Umans was Appellants' first counsel of record, followed by Carroll McNulty & Kull LLC and Graubard Miller. (*Id*. at 6.)

There is no possibility of a taint. Appellants have failed to sustain their burden with vague and conclusory assertions.

## II.   BALANCE OF EQUITIES STRONGLY FAVORS VICTORINOX'S CHOICE OF COUNSEL

In deciding disqualification motions, the Second Circuit noted that courts should "attempt[] to balance a client's right freely to choose his counsel against the need to maintain the highest standard of the profession." *Hempstead*, 409 F.3d at 132 (quotation omitted). Appellants' speculation that Locke Lord's continued representation will somehow afford Victorinox an unfair advantage stands in stark contrast to the very real and substantial hardship Victorinox will suffer if it is

compelled to obtain new counsel at this late stage in this litigation on the verge of appellate briefing and where there is ***no risk of trial taint***.

Disqualification should be denied where, as here, the purported risk of trial taint does <u>not</u> outweigh the burden imposed on the litigant who would lose its counsel. *See, e.g.*, *W.T. Grant Co. v. Haines*, 531 F.2d 671, 677 (2d Cir. 1976) ("Disqualification of present counsel and the substitution of a new attorney unfamiliar with the facts and law will inevitably result in further harmful delay and expense to [the non-moving party].").

### A. Victorinox Will Suffer Extreme Hardship If It Is Denied Its Choice of Counsel

Victorinox's counsel David Weild III has represented Victorinox for over 20 years. (Weild Decl. ¶ 2; Declaration of Rene Stutz ("Stutz Decl.") ¶ 6.) During this time, he has acted as Victorinox's primary intellectual property counsel on both transactional and litigation matters. (Weild Decl. ¶ 2.) Edwards Wildman, before its merger with Locke Lord, was Victorinox's primary intellectual property counsel in the United States, having represented Victorinox in federal courts and administrative panels. (*Id*.) The remaining members of Victorinox's litigation team, Rory J. Radding, H. Straat Tenney, and Danielle E. Gorman, have represented Victorinox in multiple contentious matters for multiple years. (Radding Decl. ¶ 8; Tenney Decl. ¶ 3; Gorman Decl. ¶ 4.)

Victorinox, with Edwards Wildman as its counsel, was granted summary judgment almost a year before the alleged conflict arose. Appellants have now appealed the district court's decision and their brief is due shortly. The former Edwards Wildman attorneys each have spent hundreds of hours on this matter. These attorneys have become intimately familiar with the facts and legal issues involved, and with the extensive record. The parties' motions for summary judgment alone were supported by over 270 exhibits, which comprised thousands of pages. This is a record that only Victorinox's counsel has mastered on behalf of its clients. Victorinox will be at a severe disadvantage and will be prejudiced if it is forced to obtain new counsel. (Stutz Decl. ¶ 7.)

There are no other attorneys or law firms who have the institutional knowledge of Victorinox's companies and the specific knowledge of the facts and law of this case who could assume Victorinox's case at this late stage without undertaking a herculean effort to reach the level of knowledge and preparation already possessed by the undersigned. Victorinox will be prejudiced without its counsel of choice. *See, e.g.*, *Enron*, 2003 WL 223455, at *4 ("A party's choice of counsel is entitled to great deference.") (citing *Nyquist*, 590 F.2d at 1246).

## B. The Evidence Suggests that this Motion Has Been Brought for Tactical Reasons

In balancing the harm to the non-moving party against the risk of taint, courts also consider the motivations behind the disqualification motion. Courts are

well aware of the unfortunate reality that such motions can be brought to gain improper advantage, rather than to protect the moving party. *See, e.g.*, *Murray v. Metro. Life Ins. Co.*, 583 F.3d 173, 180 (2d. Cir. 2009) ("Plaintiffs' delay . . . suggests opportunistic and tactical motives"); *Universal City Studios, Inc. v. Reimerdes*, 98 F. Supp. 2d 449, 455 (S.D.N.Y. 2000) (finding evidence of tactical motivations where the movant (i) knew of conflict for a month before raising the issue, (ii) asked for accelerated trial schedule, and (iii) "made no effort to show that its interests . . . would be affected adversely by the [apparent] conflict.").

There is similar evidence of tactical motivation behind the present motion. First, B&F knew of the alleged conflict in December 2015, yet waited until February 12, 2016 to move to disqualify. Second, B&F clearly stands to gain if Victorinox is forced to find and educate new counsel. Appellants' appeal brief is due shortly. Disqualification would delay the case and the execution of the Final Judgment, and place a great burden on Victorinox, thus advantaging Appellants on appeal. Finally, Appellants' motion vaguely asserts alleged harm without any detail. It is understandable that Appellants would want to disqualify Victorinox's litigation team, which marshaled evidence demonstrating Appellants' bad faith conduct and exposed their counterfeiting operation, resulting in trebled damages and an award of attorney fees, costs, pre- and post-judgment interest.

Given the timely and effective ethical screen (formal and informal) and *de facto* separation between the legacy Locke Lord and legacy Edwards Wildman offices, the insignificant risk of taint, and the significant risk of harm to Victorinox, Appellants' motion to disqualify should be denied in all respects.

## **CONCLUSION**

For the forgoing reasons, Victorinox respectfully requests the Court deny Appellants' Motion to Disqualify.

Dated: New York, New York
      February 25, 2016

           LOCKE LORD LLP

By: _____
      David Weild III
      Rory J. Radding
      H. Straat Tenney

      Brookfield Place
      200 Vesey Street, 20th Floor
      New York, New York 10281
      (212) 415-8600

      *Attorneys for Plaintiffs-Respondents Victorinox AG; Victorinox Swiss Army, Inc.; and Wenger NA, Inc.*

AM 57325157.2

20